**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| TCB Remarketing LLC,<br><br>Plaintiff,<br><br>v.<br><br>Metro Auto Auction LLC,<br><br>Defendant. | No. CV-20-01826-PHX-MTM<br><br>**ORDER** |

Pending before the Court is Plaintiff TCB Remarketing, LLC's Motion for Partial Summary Judgment (doc. 99), Defendant/Third-Party Plaintiff Metro Auto Auction, LLC's Motion for Summary Judgment (doc. 107), and Third-Party Defendants Armond Verdone, Jr., and Verdone Motors, LLCs' Motion for Summary Judgment (doc. 104). The Court has considered the motions, responses (docs. 118, 121), and reply thereto (docs. 126, 131), and the corresponding separate statements of facts and evidence (docs. 100, 105, 108, 117, 119, 129). For the following reasons, Plaintiff TCB Remarketing, LLC's Motion for Partial Summary Judgment (doc. 99) is granted in its entirety; Defendant/Third-Party Plaintiff Metro Auto Auction, LLC's Motion for Summary Judgment (doc. 107) is granted in part and denied in part; and Third-Party Defendants Armond Verdone, Jr., and Verdone Motors, LLCs' Motion for Summary Judgment (doc. 104) is granted in part and denied in part.

**I.     Background**

Plaintiff TCB Remarketing, LLC ("TCB") purchases and resells automobiles. Doc. 1 at 4, ¶ 23. Defendant/Third-Party Plaintiff Metro Auto Auction, LLC ("Metro Auto") is

a "wholesale" auto auctioneer in Phoenix. Doc. 22 at 4, ¶ 11. For a fee, Metro Auto takes delivery of vehicles from automobile dealers and facilitates the sale of such automobiles, including the transfer of ownership. Doc. 22 at 4, ¶¶ 12-13. Metro Auto conducts both "on-the-block" transactions where vehicles are sold to the highest bidder and "off-the-block" transactions where the sale price has been agreed to between buyer and seller. Doc. 108 at 2, ¶ 5. Metro Auto requires that all buyers and sellers in both "on-the-block" and "off-the-block" transactions sign its standard contract, the "Metro Auto Terms and Conditions." Doc. 15-2 at 1-2; Doc. 117-2 at 35:1-19; Doc. 129 at 134, ¶ 298.

Armond Verdone, Jr., is the sole member of Verdone Motors, LLC, an automobile dealer in Arizona. Doc. 105 at 2, ¶ 3; Doc. 108 at 2, ¶ 8. Armond Verdone, Jr., and Verdone Motors, LLC (collectively, "Verdone") are Third-Party Defendants in this lawsuit. Doc. 22. Like TCB, Verdone purchases and resells automobiles. Doc. 105 at 2, ¶ 4.

In 2016, Verdone and Metro Auto executed Metro Auto's standard contract. Doc. 105 at 2, ¶ 6; Doc. 119 at 2, ¶ 6; Doc. 129 at 134, ¶ 298. The standard contract contains an express indemnity provision which requires Verdone to indemnify Metro Auto against:

> liability, loss, damage, cost, expense, claim, suit or demand . . . arising out of or connected with . . . any of the following: (A) purchase and sale of consigned vehicles, including, without limitation, title services provided by [Metro Auto] . . . breach of [Verdone's] warranty of title, or alleged misrepresentation of [Verdone] regarding vehicle title, history, or condition; and (B) breach by [Verdone] of any other of the [contract's] terms and conditions.

Doc. 105 at 2, ¶ 6, 13; Doc. 119 at 2, ¶ 6. For many years, Verdone was Metro Auto's largest customer. Doc. 108 at 2, ¶ 9; Doc. 105 at 2, ¶ 5. During that time, Verdone bought and sold more vehicles through Metro Auto than any other dealer. Doc. 105 at 2, ¶ 5; Doc. 108 at 8, ¶ 61. However, after several years of doing business together, Verdone accrued a large amount of customer debt. Doc. 105 at 2, ¶ 5; Doc. 108 at 8, ¶ 61; Doc. 117 at 66, ¶¶ 312-313.

TCB and Metro Auto likewise were not unfamiliar parties. TCB sold many vehicles through Metro Auto prior to the events giving rise to this lawsuit. Doc. 117 at 33, ¶ 10; Doc. 19-2 at 4, ¶¶ 11-12. In 2017, TCB and Metro Auto executed Metro Auto's standard contract. Doc. 15-3. Pursuant to Section 18 of the agreement, TCB designated Metro Auto its "Authorized Representative," and granted Metro Auto the authority to:

> purchase and/or sell [c]onsigned [v]ehicles and complete and execute on behalf of [TCB] [p]apers conveying title, including endorsement on the certificate of title . . . bills of sale and other similar documents in connection with the sale of all [c]onsigned [v]ehicles; and/or (b) complete and execute on behalf of [TCB] checks and/or drafts in connection with the purchase or sale of [c]onsigned [v]ehicles.

Doc. 15-3 at 3. Metro Auto's authority as Authorized Representative was to continue in perpetuity, or until terminated by TCB in writing. Doc. 15-3 at 3.

Between December 2018 and January 2019, TCB, through a third-party shipping company, transported fourteen vehicles to Metro Auto (the "Subject Vehicles"). Doc. 108 at 4, ¶ 28; Doc. 117 at 34, ¶ 14. TCB instructed the transport company to deliver the Subject Vehicles to Metro Auto and to "check in [the Subject Vehicles] to Verdone." Doc. 108 at 7, ¶¶ 57-58; Doc. 117 at 22, ¶¶ 57-58. The parties disagree as to the set of understandings under which the Subject Vehicles arrived, and the events that followed their delivery.

TCB contends the Subject Vehicles were transported to Metro Auto with the understanding that they would be sold to Verdone via an "off-the-block" transaction, after which Metro Auto would remit the proceeds of the sale to TCB. Doc. 117 at 34, ¶¶ 19-20, 35-56. According to TCB, Metro Auto was supposed to: (1) receive the vehicles and documents of title from TCB; (2) arrange for the transfer of the vehicles and title to Verdone; and (3) collect payment from Verdone, prior to Verdone's resale of the vehicles, and remit the proceeds to TCB. Doc. 117 at 11, ¶ 40.

Metro Auto argues the Subject Vehicles arrived "pre-sold" to Verdone, and that it was not obligated to collect or remit payment from Verdone. Doc. 108 at 2, ¶ 11; 5, ¶ 39.

The parties agree that Verdone obtained title to the Subject Vehicles and sold them to third parties through Metro Auto's auction. Doc. 117 at 17, ¶ 48; Doc. 108 at 5, ¶¶ 43-44.

Metro Auto then applied the proceeds from the sale of five of the Subject Vehicles to Verdone's outstanding customer debt, and paid Verdone the proceeds from the sale of the nine remaining Subject Vehicles. Doc. 108 at 5, ¶¶ 43-44, 8, ¶ 61; Doc. 117 at 23, ¶ 61.

Following sale of the Subject Vehicles, TCB issued invoices for the vehicles. Doc. 108 at 94-95. Metro Auto's name does not appear on the invoices; rather, the invoices provide they are "bill[ed] to Verdone." Doc. 108 at 94-95. At some point Verdone wrote checks to TCB for three of the Subject Vehicles but the checks were dishonored. Doc. 108 at 6, ¶¶ 49-50, 117-118; Doc. 117 at 17-18, ¶¶ 49-50.

TCB sought payment from both Verdone and Metro Auto. Doc. 108 at 211, 213. Metro Auto refused to pay TCB because the Subject Vehicles had purportedly been pre-sold to Verdone. Doc. 108 at 211. Verdone likewise refused to pay TCB. Doc. 108 at 8, ¶ 62.

In March of 2019, Metro Auto sued Verdone in Maricopa County Superior Court for damages related to Verdone's buying and selling vehicles through Metro Auto's auction (the "Maricopa Litigation"). Doc. 105 at 5, ¶ 22; Doc. 119 at 5, ¶ 22.

A year later, TCB filed suit against Metro Auto in the United States District Court for the Eastern District of Michigan for breach of contract, breach of bailment agreement, breach of fiduciary duty, unjust enrichment, and conversion, seeking both compensatory and punitive damages. Doc. 1 at 6-10. In its answer, Metro Auto raised the following affirmative defenses: lack of personal jurisdiction; improper venue; failure to state a claim upon which relief may be granted; failure to join necessary parties; illegality; statute of frauds; waiver, laches, or estoppel; and unclean hands. Doc. 16 at 19-20.

Metro Auto then filed a third-party complaint against Verdone for implied indemnity, intentional misrepresentation, and contractual indemnity. Doc. 22 at 8-12. Upon Metro Auto's motion, the action was transferred to this Court. Docs. 9, 15, 39.

Metro Auto now moves for summary judgment on TCB's claims for breach of

contract, breach of bailment agreement, breach of fiduciary duty, unjust enrichment, conversion, and the issue of punitive damages. Doc. 107. TCB now moves for partial summary judgment on Metro Auto's affirmative defenses. Doc. 99. Verdone now moves for summary judgment on Metro Auto's claims for implied indemnity, contractual indemnity, and intentional misrepresentation. Doc. 104.

## II. Legal Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and, viewing those facts in a light most favorable to the nonmoving party, the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Summary judgment may also be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material if it might affect the outcome of the case, and a dispute is genuine if a reasonable jury could find for the nonmoving party based on the competing evidence. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the non-movant to establish the existence of material factual issues that "can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250. The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts[,]" and instead "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (internal quotation and citation omitted).

## III. Discussion

### 1. Defendant/Third-Party Plaintiff's Motion for Summary Judgment

Defendant/Third-Party Plaintiff Metro Auto seeks summary judgment on Plaintiff

1  TCB's claims for breach of contract, breach of bailment agreement, breach of fiduciary
2  duty, unjust enrichment, and conversion. Doc. 107. Metro Auto also seeks summary
3  judgment on the issue of punitive damages. Doc. 107.

### A. Breach of Contract

To prevail on a breach of contract claim, the plaintiff must prove the existence of a contract, its breach, and resulting damages. *Graham v. Asbury*, 540 P.2d 656, 657 (1975). Metro Auto argues summary judgment is warranted on TCB's claim for breach of contract because, according to Metro Auto, "there was never a contact between [TCB] and Metro [Auto] relating, in any way, to the Subject Vehicles." Doc. 107 at 12-13. Metro Auto further asserts that because no contract exists between the parties, they cannot be found in breach. Doc. 107 at 13. However, it is undisputed that the standard contract which Metro Auto and TCB executed is an existing and valid contract between the parties. Doc. 15-3; Doc. 121 at 11-12.

Relying solely on its own interpretation of the language of the standard contract, Metro Auto argues the agreement does not cover "off-the-block" transactions such as the ones at issue. Doc. 131 at 3-4. But conflicting testimonial evidence given by Metro Auto's office manager, Tabitha Hughes, indicates that buyers and sellers that conduct "off-the-block" transactions through private negotiations are required to sign Metro Auto's standard contract. Doc. 15-2 at 1-2; Doc. 117-2 at 35:1-19. Nevertheless, Metro Auto argues this evidence is insufficient to establish the existence of an enforceable contract between the parties. Doc. 131 at 3-4. But summary judgment is inappropriate where the existence of a contract is disputed, and the evidence is conflicting. *See Johnson Int'l, Inc. v. City of Phx.*, 967 P.2d 607, 611 (Ariz. Ct. App. 1998). Accordingly, summary judgment is denied on this claim.

### B. Breach of Bailment Agreement

"To constitute a bailment, there must be delivery by the bailor and acceptance by the bailee of the subject matter of the bailment." *Webb v. Aero Int'l. Inc.*, 633 P.2d 1044, 1045 (Ariz. Ct. App. 1981) (quoting *Allright Phx. Parking, Inc. v. Shabala*, 429 P.2d 513,

1  515 (Ariz. Ct. App. 1967)). The property must be placed in the bailee's actual or
2  constructive possession, and the bailee must be given sole custody and control of the
3  property. *Blair v. Saguaro Lake Dev. Co.*, 495 P.2d 512, 514 (Ariz. Ct. App. 1972). The
4  bailee's duty is one of reasonable care to prevent damage to or loss of the bailed property.
5  *Kim v. Wong*, 512 P.3d 689, 690 (Ariz. Ct. App. 2022).
6        Metro Auto argues TCB cannot establish the existence of a bailment relationship
7  because the Subject Vehicles were "checked into Verdone" upon their arrival and were
8  therefore not placed in Metro Auto's possession, sole custody, or control. Doc. 107 at 14-
9  16; Doc. 108 at 7, ¶¶ 57-58, 133-234. In the alternative, Metro Auto argues that even if a
10 bailment relationship existed, no reasonable juror could find that it breached a duty to TCB
11 as bailee of the Subject Vehicles. Doc. 107 at 15-16.
12       TCB does not meaningfully dispute Metro Auto's contention that Metro Auto did
13 not obtain full possession, custody, or control over the Subject Vehicles. Doc. 121 at 23-
14 24. Instead, TCB makes the blanket contention that "ample evidence exists within the
15 record to show that TCB delivered the vehicles into Metro's full possession," but does not
16 point to a single fact demonstrating this. Doc 121 at 23.
17       Because TCB has failed to "come forward with specific facts showing that there is
18 a genuine issue for trial," summary judgment as to TCB's claim for breach of bailment
19 agreement is granted. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586-87 (internal
20 quotation and citation omitted).

### C. Breach of Fiduciary Duty

"To establish a fiduciary . . . relationship there must be something approximating business agency, professional relationship, or family tie." *Rhoads v. Harvey Publications, Inc.*, 700 P.2d 840, 847 (Ariz. Ct. App. 1984). Agency is a fiduciary relationship that arises when one person, the "principal," manifests assent to another person, the "agent," that the agent shall act on the principal's behalf and subject to the principal's control, and the agent consents to so act. *See Ruesga v. Kindred Nursing Centers, L.L.C.*, 161 P.3d 1253, 1261 (Ariz. Ct. App. 2007).

Pursuant to Section 18 of the agreement, TCB designated Metro Auto its "Authorized Representative," and granted Metro Auto the authority to:

> purchase and/or sell [c]onsigned [v]ehicles and complete and execute on behalf of [TCB] [p]apers conveying title, including endorsement on the certificate of title . . . bills of sale and other similar documents in connection with the sale of all [c]onsigned [v]ehicles; and/or (b) complete and execute on behalf of [TCB] checks and/or drafts in connection with the purchase or sale of [c]onsigned [v]ehicles.

Doc. 15-3 at 3. Metro Auto does not allege that the parties ever terminated this agreement. Because the issue of whether the contract covered the Subject Vehicles is a question to be resolved at trial, *see supra* part III(1)(A), and because TCB's designation of Metro Auto as its "Authorized Representative" is enough to create a genuine issue of material fact as to whether there was a fiduciary relationship between the parties, summary judgment is denied.

### D. Unjust Enrichment

If there is "a specific contract which governs the relationship of the parties, the doctrine of unjust enrichment has no application." *Brooks v. Valley Nat'l Bank*, 548 P.2d 1166, 1171 (Ariz. 1976). Assuming, *arguendo*, the parties do not have a contract, TCB brings an alternative claim for unjust enrichment against Metro Auto. Doc. 1 at 8-9.

A plaintiff bringing an unjust enrichment claim has the burden of proving five elements: "(1) an enrichment, (2) an impoverishment, (3) a connection between the enrichment and impoverishment, (4) the absence of justification for the enrichment and impoverishment, and (5) the absence of a remedy provided by law." *Freeman v. Sorchych*, 245 P.3d 927, 936 (Ariz. Ct. App. 2011).

Here, Metro Auto applied the proceeds from five of the Subject Vehicles to Verdone's outstanding customer debt. Doc. 108 at 8, ¶ 61, 168-17; Doc. 117 at 23, ¶ 61, at 60, ¶ 274. Check copies demonstrate that Metro Auto issued checks to Verdone for the nine remaining vehicles. Doc. 108 at 8, ¶¶ 43, 61, 97-99, 168-178; Doc. 117 at 14-15, ¶ 43,

23, ¶ 61.

Metro Auto argues that because it paid Verdone for nine of the vehicles, TCB cannot establish Metro Auto was unjustly enriched with respect to those vehicles. Doc. 108 at 8, ¶¶ 43, 61. Metro Auto is correct on this point as the payment to Verdone did not constitute an enrichment to Metro Auto. *See id.* (requiring a plaintiff in an unjust enrichment action to prove the defendant received a benefit).

Metro Auto does not dispute that it applied the proceeds from five of the Subject Vehicles to Verdone's outstanding customer debt. Doc 107 at 20. Despite this, Metro Auto argues TCB cannot establish "an entitlement to the proceeds [from Metro Auto]" because it was not obligated to pay TCB for the vehicles. Doc 107 at 20. Metro Auto points to the purported lack of an agreement between the parties concerning the Subject Vehicles, the invoices directed to Verdone, and subsequent communications between the parties (wherein TCB attempted to collect payment from Verdone) as evidence that Metro Auto was not obligated to pay TCB. Doc. 107 at 20.

Whether or not a contract existed between the parties concerning the Subject Vehicles is an issue to be resolved at trial, *see supra* part III(1)(A). Doc. 105-1 at 13. And although the invoices did not bill Metro Auto directly, TCB emailed the invoices to both Verdone and Metro Auto. Doc. 117 at 244-285. Moreover, conflicting evidence indicates the invoices were presented to Metro Auto in this manner to facilitate Metro Auto's processing of the "off-the-block" transaction. Doc. 117 at 20-21, ¶ 54. Finally, TCB's attempts to recover payment from Verdone do not, without more, establish that Verdone alone was liable to TCB for payment. Doc. 108 at 5-6, ¶¶ 44-49; Doc. 117 at 15-16, ¶¶ 44-49, 23-24, ¶ 62.

Summary judgment on TCB's claim for unjust enrichment is granted with respect to the proceeds from the nine Subject Vehicles paid to Verdone (VINs 3555, 8096, 8125, 8402, 6145, 0156, 7266, 5240, 3971) and is denied with respect to the proceeds from the five Subject Vehicles applied to Verdone's outstanding customer debt (VINs 7671, 8574, 1957, 0652, 4315).

### E. Conversion

Conversion is "an act of wrongful dominion or control over personal property in denial of or inconsistent with the rights of another." *Case Corp. v. Gehrke,* 91 P.3d 362, 365 (Ariz. Ct. App. 2004). "To maintain an action for conversion, a plaintiff must have had the right to immediate possession of the personal property at the time of the alleged conversion." *Id.* "[M]oney can be the subject of a conversion provided that it can be described, identified or segregated, and an obligation to treat it in a specific manner is established." *Autoville, Inc. v. Friedman*, 510 P.2d 400, 402 (Ariz. Ct. App. 1973).

TCB claims Metro Auto committed an act of conversion by failing to remit the sale proceeds to TCB. Doc. 1 at 9-10. Metro Auto argues TCB's claim for conversion fails because TCB cannot establish it had a right to immediate possession of the proceeds.[1] Doc. 107 at 21-22. Specifically, Metro Auto argues TCB cannot establish that Metro Auto was "obligated to issue payment directly to [TCB], not Verdone." Doc. 107 at 21.

Whether or not a contract existed between the parties that required Metro Auto to pay TCB the proceeds from the sale of the Subject Vehicles is an issue to be resolved at trial, *see supra* part III(1)(A). Doc. 105-1 at 13. Summary judgment on this claim is denied.

### F. Punitive Damages

Finally, Metro Auto moves for summary judgment as to punitive damages on TCB's claims for breach of fiduciary duty and conversion. Doc. 1 at 8-9; Doc. 107 at 22-23.

Under Arizona law, it is clear that "punitive damages are only recoverable under special circumstances." *Rawlings v. Apodaca*, 726 P.2d 565, 578 (Ariz. 1986). "To obtain punitive damages, [a] plaintiff must prove that [the] defendant's evil hand was guided by an evil mind" by showing either that the defendant "intended to injure the plaintiff" or "consciously pursued a course of conduct knowing that it created a substantial risk of

---

[1] Metro Auto raises new arguments in its reply brief. Doc. 131 at 11-12. New arguments, issues and evidence may not be raised in reply briefs absent leave of the court. *See Bazuaye v. I.N.S.*, 79 F.3d 118, 120 (9th Cir. 1996) ("Issues raised for the first time in the reply brief are waived.").

significant harm to others." *Id.* "The wrongdoer must be consciously aware of the wrongfulness or harmfulness of his conduct and yet continue to act in the same manner in deliberate contravention to the rights of the victim." *Linthicum v. Nationwide Life Ins. Co.*, 723 P.2d 675, 79 (Ariz. 1986). An "evil mind" may be inferred "[w]hen defendant's motives are shown to be so improper, or its conduct so oppressive, outrageous or intolerable." *Rawlings*, 726 P.2d at 578-79.

Metro Auto argues that "even if everything alleged in the [c]omplaint is true . . . there is still no evidence that Metro [Auto] acted with an evil mind when it issued payment to Verdone for nine vehicles and then charged the proceeds from the remaining vehicles against [Verdone's customer] account." Doc. 107 at 22-23; Doc. 129 at 16-134. Metro Auto's motion for summary judgment "must be denied if a reasonable jury could find the requisite evil mind by clear and convincing evidence." *Thompson v. Better-Bilt Aluminum Prods. Co.*, 832 P.2d 203, 211 (Ariz. 1992).

The Court rejects Metro Auto's argument and finds that there is sufficient evidence in the record from which a reasonable trier of fact could properly award punitive damages.

A reasonable juror who concluded that Metro Auto was under a fiduciary obligation to remit the proceeds of the sale to TCB could further conclude that Metro Auto acted with an evil mind when it knowingly breached that duty and applied a portion of the proceeds of the sale against Verdone's debt, thereby only benefitting itself. Doc. 108 at 5, ¶¶ 43-44, 8, ¶ 61; Doc. 15-3. Additionally, a reasonable juror could further conclude Metro Auto "intended to injure the plaintiff" or "consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others," when it denied that the vehicles were processed through the auction and refused to remit payment to TCB despite being under an obligation to do so (doc. 117 at 26, ¶ 69). *See Rawlings*, 726 P.2d at 578.

Metro Auto's request for summary judgment as to punitive damages is denied.

**2. Plaintiff's Motion for Partial Summary Judgment**

Plaintiff TCB moves for partial summary judgment as to the affirmative defenses raised in Metro Auto's answer: lack of personal jurisdiction; improper venue; failure to

state a claim upon which relief may be granted; failure to join necessary parties; illegality; statute of frauds; waiver, laches, or estoppel; and unclean hands. Doc. 99 at 5-6. For the following reasons, TCB's motion for partial summary judgment is granted in its entirety.

"When the non-moving party has the burden of proving the . . . defense, the moving party can meet its burden by pointing out the absence of evidence from the non-moving party." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 979, 987 (9th Cir. 2006) (citing *Celotex*, 477 U.S. at 324). "When the moving party meets its burden, the adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56(e)], must set forth specific facts showing that there is a genuine issue for trial." *Id.* (internal quotation omitted); *see also Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1035 (9th Cir. 2007). "Summary judgment will be entered against the non-moving party if that party does not present such specific facts." *Miller*, 454 F.3d at 987-988.

Metro Auto, having failed to respond, has set forth no facts in dispute. Regardless, the Court may not grant summary judgment by default against Metro Auto. *See Heinemann v. Satterberg*, 731 F.3d 814, 917 (9th Cir. 2013). Rather, the Court may only grant a motion for summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Treating TCB's facts as undisputed, the Court nevertheless addresses TCB's motion for partial summary judgment on the merits.

**A. Improper Venue and Lack of Personal Jurisdiction**

Metro Auto filed its answer while this case was pending before the United States District Court for the Eastern District of Michigan. Doc. 16. Metro Auto raised the defenses of improper venue and lack of personal jurisdiction and moved to dismiss and/or transfer the case for the same. Doc. 16; Doc. 9; Doc. 15. In its motions to dismiss and/or transfer the case to this Court, Metro Auto argued the District of Arizona had jurisdiction over it and that the District of Arizona was the proper venue for this action. Docs. 9, 15. The United States District Court for the Eastern District of Michigan granted Metro Auto's

motions to transfer the action to this Court. Doc. 39. Accordingly, Metro Auto's affirmative defenses of improper venue and lack of personal jurisdiction are moot.

### B. Failure to Join Necessary Parties

Metro Auto has not established the existence of an indispensable party to this action requiring dismissal. *See Makah Indian Tribe v. Verity*, 910 F.2d 555, 558 (9th Cir. 1990). Accordingly, Metro Auto has failed to meet its burden in arguing for dismissal. *Id.*

### C. Failure to State a Claim

TCB's complaint alleges sufficient facts to state claims for breach of contract, breach of bailment agreement, breach of fiduciary duty, unjust enrichment, and conversion (doc. 1). *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (holding that to survive dismissal under Rule 12(b)(6), a complaint need not contain detailed factual allegations; rather, it must plead "enough facts to state a claim to relief that is plausible on its face"). Moreover, the failure to state a claim upon which relief may be granted is not a proper affirmative defense. *See Garrison v. Foster Poultry Farms Inc.*, No. CV-16-00280-PHX-DLR, 2016 WL 3753529, at *1 (D. Ariz. July 14, 2016); *Craten v. Foster Poultry Farms Inc.*, No. CV-15-02587-PHX-DLR, 2016 WL 3457899, at *3 n.2 (D. Ariz. June 24, 2016). Accordingly, Metro Auto may not advance failure to state a claim as an affirmative defense.

### D. Illegality

In Arizona, parties may enter contracts as they desire, provided the contract is not for an illegal purpose or against public policy. *Gaertner v. Sommer*, 714 P.2d 1316, 1318 (Ariz. Ct. App. 1986). "[If] the acts to be performed under the contract are themselves illegal or contrary to public policy, or if the legislature has clearly demonstrated its intent to prohibit maintenance of a cause of action, then recovery should be denied." *Mountain States Bolt, Nut & Screw Co. v. Best-Way Transp.*, 568 P.2d 430, 431 (Ariz. Ct. App. 1977). Because there is no evidence in the record to suggesting illegality of contract, Metro Auto's affirmative defense of illegality fails.

### E. Waiver/Laches/Estoppel

"[W]aiver is an intentional relinquishment or abandonment of a known right or privilege." *Groves v. Prickett*, 420 F.2d 1119, 1125 (9th Cir. 1970). No record evidence indicates TCB ever intentionally relinquished or abandoned its rights to the sale proceeds. To the contrary, ample evidence in the record demonstrates TCB repeatedly sought to enforce its right to the sale proceeds.

Equitable estoppel may bar recovery where the party asserting estoppel has relied to its detriment on the misrepresentations of the other party. *See Tiffany Inc. v. W. M. K. Transit Mix, Inc.*, 493 P.2d 1220, 1224 (1972). Here, where there is no evidence that Metro Auto relied to its detriment on any representation of TCB, the affirmative defense of equitable estoppel cannot stand.

"To constitute laches there must be a lack of diligence on the part of the plaintiff and resulting injury to the defendant." *Beltran v. Razo*, 788 P.2d 1256, 1258 (Ariz. Ct. App. 1990). The record demonstrates TCB moved promptly to enforce its right to the sale proceeds and no evidence indicates Metro Auto was injured because of TCB's actions.

### F. Statute of Frauds

The Arizona statute of frauds, which requires that certain contracts be in writing to be actionable, such as contracts for the sale of goods over $500, does not bar TCB's recovery. *See* A.R.S. § 44-101. TCB's claims against Metro Auto do not arise out of the sale of goods; rather, they arise out of services rendered by Metro Auto in facilitating the transfer of ownership of the Subject Vehicles to Verdone. Doc. 1; Doc 100 at 64. There is no statute of frauds issue in this case. *See* A.R.S. § 44-101.

### G. Unclean Hands

The doctrine of unclean hands "bars relief to a plaintiff who has violated conscience, good faith or other equitable principles in his prior conduct, as well as to a plaintiff who has dirtied his hands in acquiring the right presently asserted." *Dollar Systems, Inc. v. Avcar Leasing Systems, Inc.*, 890 F.2d 165, 173 (9th Cir. 1989). The record is devoid of any evidence establishing that TCB acted in bad faith or conscience.

Based on the foregoing, TCB's motion for partial summary judgment is granted in its entirety.

### IV. Third-Party Defendants' Motion for Summary Judgment

Third-Party Defendant Verdone seeks summary judgment on Metro Auto's claims for implied indemnity, contractual indemnity, and intentional misrepresentation. Doc. 104.

#### A. Implied Indemnity

When there is an express indemnity agreement in a contract, "the extent of the duty to indemnify must be determined from the contract . . . and not by reliance on implied indemnity principles." *INA Ins. Co. of N. Am. v. Valley Forge Ins. Co.*, 722 P.2d 975, 979 (Ariz. Ct. App. 1986) (internal citations omitted).

The parties agree the indemnity provision in the contract (the "Indemnity Agreement") precludes the application of the principles of implied indemnity and Metro Auto stipulates to the dismissal of its claim for implied indemnity. Doc. 104 at 4-5; Doc. 118 at 2, 11; Doc. 105 at 2, ¶ 6; Doc. 119 at 2, ¶ 6. Summary judgment is granted as to Metro Auto's claim for implied indemnity.

#### B. Contractual Indemnity

Metro Auto's third-party complaint seeks to enforce Verdone's duty to indemnify Metro Auto pursuant to the parties' Indemnity Agreement. Doc. 22. In its answer, Verdone raises, as an affirmative defense, that Metro Auto's claim for indemnification is barred by Metro Auto's own negligence. Doc. 76 at 11-12.

In Arizona, an indemnification provision "that does not specifically address what effect the indemnitee's negligence has on the indemnitor's obligation to indemnify" entitles the indemnitee only to "indemnification for a loss resulting in part from an indemnitee's passive negligence, but not active negligence." *Grubb & Ellis Mgmt. Servs., Inc. v. 407417 B.C., L.L.C.*, 138 P.3d 1210, 1213 (Ariz. Ct. App. 2006).

Accordingly, the indemnitor may assert, as an affirmative defense, that the indemnitee's active negligence excuses the indemnitor's obligation to indemnify. *Id.* at 1215-16. The burden is on the proponent of the affirmative defense to plead and prove the

defense. *Id.* at 1216 (refusing to consider the affirmative defense of indemnitee's gross negligence because it was not pled by the indemnitor).

Here, the Indemnity Agreement does not address what effect Metro Auto's negligence as indemnitee has on Verdone's obligation to indemnify. Doc. 105 at 13. Accordingly, Verdone contends it is not obligated to indemnify Metro Auto for losses arising from Metro Auto's "active negligence." Doc. 104 at 5-7.

An indemnitee may be actively negligent if the indemnitee has "personally participated in an affirmative act of negligence, was connected with negligent acts or omissions by knowledge or acquiescence, or has failed to perform a precise duty which the indemnitee had agreed to perform." *Estes Co. v. Aztec Const., Inc.*, 677 P.2d 939, 942 (Ariz. Ct. App. 1983). By contrast, an indemnitee may be passively negligent when they engage in acts of "nonfeasance, such as the failure to discover a dangerous condition, perform a duty imposed by law, or take adequate precautions against certain hazards inherent in employment." *Id.*

Verdone asserts Metro Auto was actively negligent when it "transferred the titles to Verdone . . . without conducting any due diligence into whether Verdone . . . had the right to . . . title," even though Metro Auto received the titles from TCB and even though the titles were not in Verdone's name. Doc. 104 at 5-6; Doc. 105 at 5, ¶¶ 18-21, 49. According to Metro Auto, the titles were sent to Metro Auto—to the attention of Verdone—and the transfer of title was done at Verdone's direction. Doc. 119 at 4-5, ¶¶ 17-20, 13-16. As such, a genuine issue of material fact exists as to whether Metro Auto was negligent and whether that negligence rose to the level of "active negligence."

Verdone also asserts Metro Auto was actively negligent when it remitted the proceeds of the vehicle sales to Verdone instead of TCB. Doc. 104 at 5. Whether Metro Auto was required to remit the proceeds of the vehicle sales to TCB is a question of fact to be resolved at trial, *see supra* part III(1)(A).

Additionally, Verdone contends Metro Auto's claim for indemnification is barred by Metro Auto's alleged breach of its agreement with TCB. Doc. 104 at 5-7; Doc. 105-1

at 13.

In Arizona, "[a]n indemnitee may not recover for losses arising from its own breach of contract unless the indemnity agreement so provides in clear and unequivocal terms." *U.S. Life Title Co. of Ariz. v. Bliss*, 722 P.2d 356, 358 (Ariz. Ct. App. 1986); *see also Royal Properties, Inc. v. Ariz. Title Ins. and Trust Co.*, 476 P.2d 897, 899 (1971) (barring indemnitee's recovery from indemnitor where the loss was the result of the indemnitee's breach). The duty to indemnify, however, depends on the indemnitee's "actual rather than alleged fault." *INA Ins. Co. of N. Am.*, 722 P.2d at 981. A candidate for possible indemnity does not lose the right to indemnification simply because of the unproven claims of a third party. *Id.*

Although the Indemnity Agreement does not provide for the recovery of losses arising from Metro Auto's breaches of contract, whether Metro Auto committed a breach of contract is an issue to be resolved at trial, *see supra* part III(1)(A). Doc. 105-1 at 13. Summary judgment on this claim is denied.

### C. Intentional Misrepresentation

Metro Auto's third-party complaint alleges Verdone intentionally misrepresented he was the owner of the fourteen vehicles. Doc. 22 at 9-10. Verdone argues it is entitled to summary judgment on this claim because it is duplicative of the claims asserted in the Maricopa Litigation. Doc. 104 at 7-8.

This Court has the authority to dismiss duplicative actions. *See Adams v. Cal. Dep't of Health Servs.*, 487 F.3d 684, 688 (9th Cir. 2007), *abrogated on other grounds by Taylor v. Sturgell*, 553 U.S. 880 (2008). An action is duplicative if "the causes of action and relief sought, as well as the parties or privies to the action, are the same." *Id.* at 688-89.

Metro Auto's claim for intentional misrepresentation is not duplicative of claims asserted in the Maricopa Litigation because the Subject Vehicles at issue in this action are not at issue in the Maricopa Litigation. Doc. 118 at 8-9; Doc. 119 at 6-7, ¶¶ 23-24, 19.

In the alternative, Verdone argues the claim fails as a matter of law because Metro Auto could not have reasonably relied on Verdone's alleged misrepresentations. Doc. 104

at 7-8. Reasonable reliance is an element of TCB's claim for intentional misrepresentation. *See Lerner v. DMB Realty, LLC*, 322 P.3d 909, 914 (Ariz. Ct. App. 2014). Verdone contends Metro Auto cannot prove it reasonably relied on Verdone's misrepresentations that he was the owner of the Subject Vehicles because when Metro Auto received the titles from TCB they were not in Verdone's name. Doc. 104 at 9.

Conflicting evidence establishes the titles were sent to the attention of Verdone and that the titles were transferred at Verdone's direction. Doc. 119 at 4-5, ¶¶ 17-20, 13-16. Moreover, the Indemnity Agreement required Verdone to warrant he had "the right and power to sell and transfer title" to vehicles consigned through the auction. Doc. 105 at 13-14. Verdone has not met its initial burden of showing there is an absence of dispute as to whether Metro Auto's actions were reasonable. Summary judgment on this claim is denied.[2]

**IT IS ORDERED** as follows:

1. Plaintiff TCB Remarketing, LLC's Motion for Partial Summary Judgment (doc. 99) is **granted in its entirety**.
2. Defendant/Third-Party Plaintiff Metro Auto Auction, LLC's Motion for Summary Judgment (doc. 107) is **granted in part and denied in part**. Defendant/Third-Party Plaintiff Metro Auto Auction, LLC's Motion for Summary Judgment is **granted** as to Plaintiff TCB Remarketing, LLC's claim for breach of bailment agreement and as to nine of the Subject Vehicles in Plaintiff TCB Remarketing, LLC's claim for unjust enrichment. Summary judgment is **denied** as to Plaintiff TCB Remarketing, LLC's claims for breach of contract, breach of fiduciary duty, conversion, punitive damages, and as to five of the Subject Vehicles in Plaintiff TCB Remarketing, LLC's claim for unjust enrichment.

---

[2] Verdone's contention that Metro Auto's claims are not proper third-party claims is without merit. *See* Fed. R. Civ. P. 14(a) (allowing a defending party to bring in as a third-party defendant a person who is "not a party to the action [but] who is or may be liable to [the defending party] for all or part of the plaintiff's claim against him").

3. Third-Party Defendants Armond Verdone, Jr., and Verdone Motors, LLCs' Motion for Summary Judgment (doc. 104) is **granted in part and denied in part**. Summary judgment is **granted** as to Defendant/Third-Party Plaintiff Metro Auto Auction, LLC's claim for implied indemnity. Summary judgment is **denied** as to Defendant/Third-Party Plaintiff Metro Auto Auction, LLC's claims for contractual indemnity and intentional misrepresentation.

Dated this 28th day of September, 2022.

*Michael T. Morrissey*
Honorable Michael T. Morrissey
United States Magistrate Judge